**SO ORDERED.**

**SIGNED this 18 day of March, 2014.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
FAYETTEVILLE DIVISION

IN RE:

ROBERT CARROLL BAREFOOT,                CHAPTER 12
                                        CASE NO. 12-02160-8-DMW
    DEBTOR

## ORDER SUSTAINING DEBTOR'S OBJECTION TO PROOF OF CLAIM OF USDA FARM SERVICE AGENCY

Pending before the Court is the Objection to Amended Claim No. 16 of USDA Farm Service Agency (the "Objection") filed by Robert Carroll Barefoot (the "Debtor") on January 6, 2014 and the Response to Objection to Claim of Farm Service Agency (the "Response"), filed by the U.S. Department of Agriculture, Farm Service Agency ("FSA") on January 15, 2014.  The Court conducted a hearing on February 11, 2014 in Greenville, North Carolina to consider the Objection and the Response.  At the close of the hearing, the Court gave the parties twenty-one days to file supplemental briefs in support of their respective positions.  On March 4, 2014, the Debtor filed the Brief in Support of Objection to Amended Claim No. 16 of USDA Farm Service Agency and FSA filed the Memorandum of Law in Support of United States Response to Objection to Claim of Farm Service Agency.

## BACKGROUND

The Debtor filed a voluntary petition for relief under Chapter 12 of the Bankruptcy Code on March 20, 2012. The Debtor is a self employed farmer. Prepetition, on March 24, 2010, the Debtor executed a promissory note in favor of FSA in the original amount of $306,954.00. Prepetition, the Debtor participated in the Supplemental Revenue Assistance Payments ("SURE") Program. The SURE Program was implemented by the United States Department of Agriculture and provides assistance to farmers suffering crop losses as the result of natural disasters occurring through September 30, 2011. *See* News Release, U.S. Department of Agriculture, Fact Sheet, Supplemental Revenue Assistance Payments Program (Oct. 2012), http://www.fsa.usda.gov. On January 26, 2012, the Debtor became entitled to a 2010 SURE Program payment in the amount of $83,300.00 which was to be paid by Commodity Credit Corporation ("CCC"). Said payment was applied to a claim owed by the Debtor to FSA. On May 8, 2012, FSA filed proof of claim number 16 in the secured amount of $69,970.16 as of the petition date (the "Original Claim"). The deadline for governmental units to file proofs of claim expired on September 30, 2012. On October 11, 2012, the Court entered the Order Confirming Chapter 12 Plan of Reorganization (the "Plan"). The Plan provides for payments to unsecured creditors based on the estimated equity in the Debtor's assets.

Approximately sixteen months after filing its Original Claim, FSA filed an amended proof of claim in the secured amount of $101,848.73 on September 30, 2013 (the "Amended Claim"). The Amended Claim provides that in March of 2013, FSA conducted a random audit of the Debtor's SURE Program payment and discovered that the CCC over paid the Debtor SURE Program proceeds in the amount of $31,732.00. CCC made the original payment of $83,300.00 by mistake. The Debtor was actually only entitled to a payment of $51,568.00. FSA then wrote a check to the Debtor

in the amount of $31,732.00, representing the overpayment, and contends the check should be signed over to CCC to refund the amount to the SURE Program. FSA contends the government has a right to setoff the debt owed by the Debtor to CCC and it should be allowed to increase its secured claim by the overpayment amount of $31,732.00, for a total secured claim of $101,848.73.

The Debtor objects to the Amended Claim of $101,848.73 and requests the Court permit FSA a secured claim only in the amount of its Original Claim amount of $69,970.16. The Debtor objects to FSA voluntarily refunding prepetition overpayments to the SURE Program, without Court approval, and then contending it is entitled to a larger secured claim of $101,848.73, based on the refund. The Debtor does not dispute that the SURE Program may be entitled to an unsecured claim in the Debtor's case. FSA responds that the SURE overpayment created a prepetition debt from the Debtor to the SURE program for $31,732.00, and the erroneous payment to FSA created a prepetition debt from FSA to the Debtor. Accordingly, FSA contends the Debtor will be expected to pass the refund check onto the SURE program to resolve that prepetition debt, by setoff and/or recoupment. For setoff purposes, FSA contends, the federal government is to be considered as a single "unitary creditor."

The issue before the Court is whether the FSA is entitled to remit the amount of $31,732.00 to CCC by way of setoff, which amount is based on a prepetition overpayment by CCC to the Debtor, and then increase its proof of claim in the secured amount of $31,732.00.

## DISCUSSION

Section 502 of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Section 502 further provides:

> (b) Except as provided in [other sections], if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount. . . .

11 U.S.C. § 502(b). If a party in interest objects to a claim filed under § 502, the party in interest "must introduce evidence to rebut the claim's presumptive validity." *In re Harford Sands Inc.*, 372 F.3d 637, 640 (4th Cir. 2004) (citing Fed. R. Bankr.P. 9017, Fed.R.Evid. 301). If the party in interest does introduce evidence that rebuts the claim's validity, "the creditor has the ultimate burden of proving the amount and validity of the claim by a preponderance of the evidence." *Id.*

FSA's Amended Claim "constitute[s] prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). In response, the Debtor filed a timely objection to the claim. The Debtor introduced evidence rebutting the claim's presumptive validity, therefore shifting the burden to FSA to prove the amount and validity of the claim by a preponderance of the evidence. *In re Harford Sands Inc.*, 372 F.3d 637, 640 (4th Cir. 2004).

The right to setoff "is a common law doctrine based on principles of equity." *In re Britton, et al*, 83 B.R. 914, 917 (Bankr. E.D.N.C. 1988). Section 553(a) provides:

> [e]xcept as . . . provided in this section and in sections 362 and 363 . . . this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case . . . against a claim of such creditor against the debtor that arose [prepetition]

11 U.S.C. § 553(a).

Section 362(a)(7) provides that the filing of a bankruptcy petition operates as an automatic stay against the setoff of any debt owing to the debtor that arose prepetition against any claim against the debtor. 11 U.S.C. 362(a)(7). "A bankruptcy court need not allow setoff even if a creditor asserts a valid right to it." *Alexander Properties, LLC v. Patapsco Bank*, 883 F. Supp. 2d 552, 559

4

(D. Md. 2012) (citing *In re Vance*, 298 B.R. 262, 267 (Bankr. E.D.Va. 2003); *See Cumberland Glass Mfg. Co. v. De Witt*, 237 U.S. 447, 455 (1915) (noting that the setoff provision in Section 553 is "permissive rather than mandatory, and does not enlarge the doctrine of setoff, and cannot be invoked in cases where the general principles of setoff would not justify it. The matter is placed within the control of the bankruptcy court, which exercises its discretion in these cases upon the general principles of equity.")

The Bankruptcy Court for the Eastern District of North Carolina has previously addressed FSA's right to setoff in *In re Britton*, 83 B.R. 914 (Bankr. E.D.N.C. 1988). In that case the United States of America ("USA") filed motions to lift the automatic stay to allow the setoff of debt it owed to the debtors under the price support and production adjustment program against its claim against the debtors. *Id.* at 915. The Court denied the USA's motion and found the USA waived its right to setoff by failing to assert its right to setoff in its proof of claim. *Id.* at 921. The Court stated that "in Chapter 11 and Chapter 12 cases, the burden is on the USA to timely and properly file its proof of claim asserting the right of set-off and to seek a lifting of the automatic stay to permit it to exercise this right." *Id.* at 921. In its discussion the Court noted that the "right to set-off is a privilege vested in the creditor with a claim against the debtors. If it is not timely and properly exercised, it is waived." *Id.* At 919 (citing *In re Mauch Chunk Brewing Co.*, 131 F.2d 48 (3rd Cir. 1942). The Court emphasized the importance of creditors asserting their right to setoff in a timely and accurate manner "so as to permit the debtor to timely file a plan and other creditors to decide whether to object to the plan." *Id.* at 921. The Court noted that a plan of reorganization, if successful, frequently generates dividends in far excess of the liquidation value of the debtor's assets. *Id.* at 920. "As a result, it is far more likely that other creditors and the debtor will be prejudiced where a

creditor is permitted to change his position by asserting a set-off not asserted in the original proof of claim." *Id.* The Court further noted that:

> Other factors also come into consideration in Chapter 12 cases. In these cases, Congress has fixed a very short time frame in which the debtor must file a plan, *i.e.* 90 days from the filing of the petition. . . The confirmation hearing is required to be concluded within forty-five (45) days of the filing of the plan . . . These provisions of Chapter 12 are designed to benefit the creditors by requiring prompt confirmation or dismissal of the case.

*Id.* At 920-921.

Here, FSA contends the government is entitled to setoff. FSA filed its Original Claim on May 8, 2012 and its Amended Claim on September 30, 2013, almost one year after the Debtor's Chapter 12 plan was confirmed on October 11, 2012. Neither claim asserts a right for setoff.[1] Further, CCC has not filed a proof of claim in this case based on its prepetition overpayment to the Debtor and in failing to do so has not asserted CCC's right to setoff its debt of $31,732.00 owing now from the Debtor to CCC. The Amended Claim filed by FSA only states that the Debtor

---

[1]Both the Original Claim and the Amended Claim include the following form language:

> This claim reflects the known liability of the debtor to this agency of the United States. The United States reserves the right to amend this claim to assert subsequently discovered liabilities. This agency holds subject to set off against this claim a debt owed to the debtor of _____ amount. The identification of any sums held subject to setoff is without prejudice to any other right under 11 U.S.C. Section 553, to set off, against this claim, debts owed to debtor by this or any other agency.

The Court finds this form language does not accurately assert the right to set off, so as to "permit the debtor to timely file a plan and other creditors to decide whether to object to the plan" as provided for *In re Britton*, *et al*, 83 B.R. 914, 921 (Bankr. E.D.N.C. 1988). The form language does not include the amount of setoff and the space is left blank. Further, the form language provides that the FSA is the "agency" that holds the right to setoff when in fact it is the CCC that alleges it is owed the refund in the amount of $31,732.00.

received an overpayment on his 2010 SURE Program payment in the amount of $31,732.00 and that the amount would be added to the FSA secured claim. It does not assert a right to setoff.

In addition, FSA has failed to file a motion for relief from the automatic stay pursuant to Section 362(a)(7), which would permit it to exercise any such right to setoff . Further, the Debtor's Plan was confirmed on October 11, 2012.  The Debtor and other creditors have relied on the confirmed Plan and the Debtor has been making payments pursuant to the confirmed Plan. The Debtor represents if the Amended Claim is allowed, there would be little or no money available for unsecured creditors. The Plan was confirmed relying on a secured claim of FSA in the amount of $69,970.16, not $101, 848.73.

Neither FSA nor CCC have properly plead setoff in a proof of claim. CCC, the party actually with standing to claim a setoff, has not even bothered to file a proof of claim, in which a right to setoff  $31,732.00 owing from the debtor to CCC, could be alleged.   Further, neither have FSA nor CCC moved to have the automatic stay lifted in order to pursue a setoff.  The debtor's Chapter 12 plan was confirmed eleven days short of one year before FSA filed its amended proof of claim.  Neither FSA nor CCC have timely fulfilled  any of the requirements to assert a right to setoff as set forth in *In re Britton*, 83 B.R. 914 (Bankr. E.D.N.C. 1988).

## CONCLUSION

For the foregoing reasons, the Debtor's Objection to the Amended Claim is **SUSTAINED**. FSA's Original Claim in the amount of $69,970.16 stands.  CCC is allowed thirty (30) days from the date of this Order to file its unsecured claim in the amount of $31,732.00.

**SO ORDERED**.

**END OF DOCUMENT**